# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 6:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT:
J.P.

Joann M. Price
Merrillville, Indiana

ATTORNEY FOR APPELLANT:
A.M.
Deidre L. Monroe
Gary, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent Child Relationship of: | March 9, 2017 |
| A.P. & D.P. (Minor Children) | Court of Appeals Case No. 45A03-1608-JT-1956 |
| and, | Appeal from the Lake Superior Court |
| J.P. (Father) and A.M. (Mother), | The Honorable Thomas Stefaniak, Jr. |
| *Appellants-Respondents,* | Trial Court Cause No. 45D06-1504-JT-88 45D06-1504-JT-89 |
| v. | |

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

# Case Summary

J.P. ("Father") and A.M. ("Mother") appeal the termination of their parental rights to A.P. and D.P. We affirm.

# Issue

Although they filed separate Appellants' briefs, Father and Mother both argue that the evidence is insufficient to support the termination of their parental rights.

# Facts

Father and Mother have two children: A.P., born in October 2010, and D.P., born in May 2012. On October 21, 2013, Father and Mother were arrested at their Lake Station home after a drug raid. Father was charged with selling marijuana, and Mother was charged with maintaining and/or visiting a

common nuisance.[1]  The Department of Child Services ("DCS") removed the children from Father and Mother's care, and the children were initially placed with their maternal grandmother.  On or about October 30, 2013, maternal grandmother asked her cousin to babysit the children, but grandmother did not return to get the children.  DCS removed the children from grandmother's care, and they were placed with the cousin, who became their foster parent.

[4]  DCS filed a petition alleging that the children were children in need of services ("CHINS") and alleged Father had been arrested for selling drugs in the family's home while the children were present, that Mother was aware of Father's activities, and that officers found 6.5 grams of marijuana in the home along with two prescription pills for which neither parent had a valid prescription.  Mother admitted to the allegations, and a fact-finding hearing was held with regard to Father.  The trial court found that the children were CHINS and ordered Mother and Father, in part, to participate in a parenting assessment and follow all recommended treatment, a substance abuse evaluation and follow all recommended treatment, an initial clinical assessment and follow all recommended treatment, supervised visitations, and home-based counseling services.

[5]  Mother's participation in services was sporadic.  After the children were removed, Mother increased her use of marijuana.  At some point during the

---

[1] The exact charges and convictions resulting from this incident are not clear from the record provided to us.

CHINS proceedings, Mother also started abusing heroin and other opiates. Although Mother completed an intensive outpatient drug program, she continued to abuse heroin. Further, although she was ordered to participate in drug testing twice a week, and later three times a week, her participation was very limited. Mother admitted that she failed more drug tests than she passed. She stopped participating in any drug screens in April 2016. She also was offered in-patient treatment but declined to participate.

[6] Mother completed a clinical assessment, which recommended a psychological assessment. Although Mother was asked to participate in the psychological assessment in early 2014, Mother did not complete the assessment until January 2016. Mother was referred to a therapist for individual therapy and substance abuse counseling, but Mother only attended one session. Mother was scheduled to receive weekly supervised visitations, but she often missed visits. Between November 2015 and February 2016, she missed approximately every other visit. Supervised visitations were terminated in February 2016.

[7] As a result of the raid on Father and Mother's residence, Father was convicted of distributing drugs. He was incarcerated during the entire CHINS and termination proceedings. Father has not seen the children in person since they were removed. His last contact with them was during a video visit in September 2014. At the time of the termination hearing in July 2016, Father was in a work release program. He testified that he would be on work release for another twelve months and that, after completing work release, he would be on probation.

[8] In addition to the drug distribution charges, Father also has convictions for robbery, battery resulting in bodily injury, possession of marijuana, domestic battery, escape, false informing, and felony non-support of a child. Father has nine biological children, and five of those children are under the age of eighteen. At the termination hearing, Father was unable to name all of the children "off the top of [his] head." Tr. p. 34. Father was not involved in the other minor children's lives, and he has never seen two of his children. Father owes approximately $20,000 in back child support, which resulted in his conviction for felony non-support of a child. As a result of that conviction, he was sentenced to eight years of probation.

[9] When the foster parent took the children, three-year-old A.P. weighed only nineteen pounds, had no hair, was still wearing diapers, and had unusual behaviors. A.P. ate off of the floor, hoarded food, did not know how to chew, slept on the floor, had nightmares, and was terrified of sirens and police officers. Eighteen-month-old D.P. was very aggressive. During play therapy, A.P. was diagnosed with "neglect of a child and adjustment disorder with mixed disturbance of mood and conduct." Tr. p. 168. The therapist observed A.P. play with dolls in "a very violent manner," including holding down female dolls with male dolls and rubbing the male doll's genitals on the female doll. *Id.* at 170. At the time of the termination hearing, the children were thriving. They were both of normal weight and height, and they were doing well. The foster mother testified that she is willing to adopt the children.

In April 2015, DCS filed a petition to terminate Father and Mother's parental rights. A termination hearing was held in July 2016. The trial court granted DCS's petition. Father and Mother now appeal.

## Analysis

Father and Mother challenge the termination of their parental rights to A.P. and D.P. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the

credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father and Mother's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[13] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## I. Changed Conditions

Both Father and Mother challenge the trial court's finding of a reasonable probability that the conditions resulting in the children's removal or the reasons for placement outside the home of the parents will not be remedied.[2] In making

---

[2] Father also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the children is clearly erroneous. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here. Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the children's well-being. The trial court found a reasonable probability that the conditions that resulted in the children's removal and continued placement outside Father's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the children's well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

On the other hand, Mother makes no argument regarding the continuation of the parent-child relationship posing a threat to the children. The trial court concluded both that the conditions resulting in the children's removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the children's well-being. By failing to challenge the trial court's conclusion regarding a threat to the children's well-being, Mother has implicitly conceded the sufficiency of (b)(2)(B)(ii) and has effectively waived review of the trial court's determination under Indiana Code Section 31-35-2-4(b)(2)(B). Waiver notwithstanding,

this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[15] On this issue, the trial court issued extensive findings and conclusions. The trial court found:

> There is a reasonable probability that the conditions resulting in the removal of the child(ren) from their parents' home will not be remedied in that: The children were removed from parental care in October 2013 when the home was raided and the parents were arrested for dealing drugs. The children were present during the drug transactions.
>
> Father remained incarcerated and mother was released from jail.
>
> The children were in poor condition. The three year old did not speak, was underweight and her clothes were too small. The three year old was not potty trained and would only want to sleep on the floor and not in a bed. The child's hair was falling out due to malnourishment.
>
> Services were offered to the parents pursuant to a case plan which included substance abuse evaluations with recommended

---

we will address whether the trial court properly found a reasonable probability that the conditions that resulted in children's removal and continued placement outside Mother's home would not be remedied.

treatment, random drug screens, initial clinical assessments, individual therapy, parenting classes, home based services, outpatient substance abuse program and inpatient substance abuse program, psychological evaluations and supervised visitations.

The Department of Child Services case manager testified that she has been the ongoing caseworker for this matter since October 2014. Mother was very sporadic with drug screens at that time. Mother was also homeless and unemployed. The CHINS cases were open for approximately one year at this point. Mother began testing positive for opiates on her drug screens. Services were increased for the mother in an attempt to circumvent mother's increased drug uses and drugs of choice. Mother's service providers remained the same, but mother did not participate in the services.

Case Manager McLean testified that Mother did not participate in the individual therapy. Mother was very sporadic with her drug screens. Mother was also sporadic with her supervised visitations with her children.

Mother testified that she was homeless when this case initially began. Mother lived with various individuals. Mother was participating in supervised visits with her children and never progressed in the visits. Mother testified that she struggled with stability for the first year to two years of this case being active. Mother was not employed. Mother testified that she used marijuana consistently throughout these cases. Mother testified that she has also progressed to taking prescription medications along with the marijuana. Mother testified that she further progressed around October 2014 to begin using heroin. Mother further testified that she has been clean for the last four months. The Court notes that mother has not submitted to any screens since April 18, 2016. The Court notes Exhibit S shows positive drug screens for the mother from January throughout March of

2016 that indicate all positive screens for opiates. Mother submitted to eight total screens in those months and mother was ordered to submit to drug screening three times per week. Mother testified that she avoided taking her drug screens, because she didn't want to be judged on the drug screens. Mother testified that she is a great mother and loves her children. Mother is in total denial of her substance abuse issues and passes the blame to others. Mother testifies in open court that she is clean for the last four months, but did not submit to any drug screens. Mother testified that her visits with her children have been discontinued due to mother missing one visit, even though the testimony and evidence showed that mother was cancelling fifty percent of her visits scheduled.

Mother eventually did enter an outpatient substance abuse program, but continued to use drugs, by her own testimony. Clearly, mother has not solved her substance abuse issues.

Mother was offered an inpatient substance abuse program. Mother refused to enter the program. Mother indicated that she would kick her drug habit on her own. Mother continued to test positive for heroin on her drug screens. Mother would not keep in contact with her service providers. Mother was sporadic with her visitations with her children. Mother would cancel her visits with her children. Mother's visitations with her children were suspended in February of 2016 due to her non-compliance and continued positive drug screens.

Father . . . was sentenced to eight years in prison for drug charges stemming from this arrest. Father has now been released from prison and is currently in work release. Father has a lengthy criminal history. Father was arrested beginning in 1999 for robbery. Father spent one year in jail and then went to work release. Father was again arrested in 2002 for battery resulting in bodily injury and possession of marijuana. Father testified that he spent nine months incarcerated and released to parole. Father

was then charged with domestic battery with the mother of his other children as the victim. Father was sentenced to work release. Father was again arrested in 2004 and charged with escape due to non-compliance with the work release program. Father was sentenced to the Department of Corrections. Father was eventually released from incarceration. Father was again charged in 2009 for false informing. Father testified that he thought he had a warrant for failure to pay his child support and lied about his name. Father was charged in 2012 with another count of false informing. Father again was arrested for the incident that led to the Department of Child Services involvement in which father was charged with possession of marijuana and possession of stolen property. Father was sentenced to eight years for this particular incident. Father admitted prior to his arrest he was drug dealing.

The evidence shows a long line of criminal conduct. The father has such a historical pattern of criminal conduct that the Court must take the pattern into account and consideration.

Father testified that he has nine children, with five children under the age of eighteen. Father testified that he does not have any relationship with any of his children. Father further testified that he does not pay child support for any of the children. Father stated that he knew he has nine children and has never paid any child support for any of the children. Father testified that the children were with their mothers and they did not need the support. Father testified that he will not be released from probation due to being charged with a felony for non payment of child support. Father is currently sentenced to six years probation with two years of incarceration suspended unless the arrearages are paid.

Father testified that he once resided in the State of Michigan, to which he has a criminal record in that State, moved to Elkhart County, and had multiple charges in that county and also

multiple children. Then father resided in Northwest Indiana, also with multiple criminal charges and multiple children. Father's history cannot be ignored.

Father has been incarcerated for the entirety of these cases. Father's criminal history and incarcerations stem back beginning in 1999. Father has no relationship with any of his children. Father was not a parent to his other children, therefore the court finds that there is a reasonable probability that father will not be a proper parent to these children. Biology does not make a person a father, clearly shown by this father. Father testified, "That I want to lead by example". The Court notes that father may have good intentions, but has not shown any pattern of consistency or responsibility regarding his children. Father does not have a relationship with these children. In the past seventeen years, father has spent much of those years in and out of incarceration for multiple offenses.

Although father indicates that he wishes to turn his life around and be a father to these children, the Court cannot gamble on these children's lives. These children do not know the father and [have] no bond with the father. Father has not seen these children in almost three years. Father has not shown by example with his other children.

Father further testified that he didn't know that he could take classes while incarcerated and is currently going to begin classes. Father continues with his criminal issues and is currently residing in work release. Father still has to deal with his unresolved criminal matters including the nonpayment of child support. Even if Father is successful in Work Release and ultimately successful upon release from incarceration, the children's need for a stable, consistent, safe and loving home outweighs Father's rights to parent after the long passage of time in this case.

Mother has not addressed her substance abuse issues. Mother has not obtained stability. Mother continues with her instable lifestyle. Mother did not participate in the services offered. Services were offered to the mother for almost three years and mother has not completed the case plan for reunification. Mother testified that she wants to do services, but mother's services are still active and mother does not make herself available for the providers. Mother does not participate in the services. Mother further testified that she is willing to do therapy, but does not meet with her therapist. Mother indicated that she was diagnosed with bipolar and depression. Mother was given a psychological and psychiatric evaluation, but did not follow through with the available recommendations. Mother only met with her therapist on one occasion. Mother does not make herself [available] for the services offered to her in an effort to help mother. Mother is in no position to parent these children. These children have been wards for the past three years and mother is no closer to reunification with the children than she was in at the initial removal in October of 2013. There has been absolutely no progress in the case plan or the services after almost three years of services. All services for mother have failed.

These children deserve permanency in their lives. The children have been wards of the Department of Child Services for most of their lives. Neither parent is any closer to reunification th[a]n they were in October 2013 when the Department first became involved. Mother has not addressed her substance abuse issues. Father is still dealing with his unavailability due to his continued incarcerations.

[A.P.] has been in therapy since her removal and has been diagnosed with adjustment disorder with mixed disturbances of mood and conduct and neglect of a child. [A.P.] has endured trauma from her experiences with the biological parents and is now stable and thriving. All of [A.P.'s] needs are being met in her placement. [D.P.] was removed as an infant and has no

memory of living with biological parents. Removal of these children from this current placement where they have been for more than two years would be detrimental to these children's well-being.

There is also no evidence to show that mother has kicked her drug habit. There is no evidence that shows that father's criminal problems are behind him. Father is still currently dealing with his criminal problems and is still currently in work release and on probation. Parents are still in no position to properly parent these children, almost three years later. The Court has to look at the best interests of these children.

Neither parent is providing any emotional or financial support for the children. Neither parent has completed any case plan for reunification. Neither parent is in a position to properly parent these children. It is unlikely that either parent will ever be in a position to properly parent these children. The children are in relative placement and are bonded and thriving in their placement.

Mother's App. Vol. II pp. 2-6. Neither Father nor Mother challenge any of these specific findings.

[16]    Citing Indiana Code Section 31-35-3-1 and Indiana Code Section 31-35-3-4, Father argues that none of his convictions fall within "the statutory rubric that indicates termination of parental rights is warranted . . . ." Father's Appellant's Br. pp. 10-11. Indiana Code Section 31-35-3-4 allows DCS to file a petition to terminate a parent-child relationship where the parent is convicted of certain offenses, none of which are relevant here. However, Father's parental rights were terminated under a different chapter, Indiana Code Chapter 31-35-2,

which pertains to the termination of a parent-child relationship involving a delinquent child or a child in need of services. Consequently, Indiana Code Chapter 31-35-3 is inapplicable here.

[17] Father next argues that he was denied the opportunity to participate in services while he was incarcerated, he was not provided with documents during the CHINS proceeding, he has engaged in substance abuse and parenting classes, he made all reasonable efforts to stop the termination of his parental rights, and he has made favorable changes in his life. DCS demonstrated that Father has a significant, on-going criminal history. Even when he finishes another year of work release, he has many years of probation to complete. Father does not have a relationship with the two children at issue here, and he does not have a meaningful relationship with any of his other seven children. Services were unavailable during Father's incarceration. Although Father started a substance abuse class and a parenting class, he did not start them until the day before the termination hearing. Given Father's habitual patterns of conduct, the trial court's finding regarding a reasonable probability that the conditions resulting in the children's removal from Father's care will not be remedied is not clearly erroneous.

[18] As for Mother, she argues that the trial court failed to give proper weight to her claims that she missed visitation because she was sick, that she was no longer using heroin, that she was employed and had stable housing, and that she had completed intensive outpatient drug treatment. Mother's argument is merely a request that we reweigh the evidence and judge her credibility, which we cannot

do. *I.A.*, 934 N.E.2d at 1132. The trial court did not find Mother's claims that she was no longer using drugs to be credible. Mother declined to participate in in-patient drug treatment, failed to participate in individual therapy, repeatedly missed supervised visits with the children, and continued using heroin even after completing intensive outpatient drug treatment. Further, Mother has not participated in drug testing since April 2016. Given Mother's inability to address her substance abuse issues, the trial court's finding regarding a reasonable probability that the conditions resulting in the children's removal from Mother's care will not be remedied is not clearly erroneous.

## II. Best Interests

[19] Both parents challenge the trial court's finding that termination of their parental rights is in the children's best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* The trial court found: "It is in the best interest of the child(ren) and their health, welfare and future that the parent-child relationship between the child(ren) and their parents be forever fully and absolutely terminated." Mother's App. Vol. II p. 6.

[20] Father argues that he never put the children "in harm's way," that he supported the children, that he had a meaningful relationship with the children prior to his incarceration, and that severing the parent-child relationship is not in the children's best interests. Father's Appellant's Br. p. 16. Mother argues that the

children should be reunited "with a mother who loves them" and that the children will suffer immeasurable pain when they realize they will not have any further contact with Mother. Mother's Appellant's Br. p. 13.

[21] When the children were placed in their current foster home, the children were malnourished, developmentally delayed, and struggling. However, now, they are thriving. The children's therapist recommended that the children needed "continued and ongoing stability and permanency." Tr. p. 184. She said that the children needed "to maintain the attachment and the bond . . . they have formed in their current home." *Id.* Given Mother and Father's lack of stability, the length of time the children have been out of their care, and the children's improved condition, the trial court's finding that termination was in the children's best interests is not clearly erroneous.

### III. Satisfactory Plan

[22] Finally, Father also challenges the trial court's finding that there is a satisfactory plan for the care and treatment of the children. Indiana courts have held that for a plan to be "'satisfactory,'" for the purposes of the termination statute, it "'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.'" *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (quoting *Lang v. Starke Cnty. Office of Family and Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*.

The trial court found: "The Indiana Department of Child Services has a satisfactory plan for the care and treatment of the child(ren) which is Adoption by the foster parent . . . ." Mother's App. Vol. II p. 6. The children's foster mother testified that she was willing to adopt them. This plan is satisfactory, and the trial court's finding is not clearly erroneous.

## Conclusion

The evidence is sufficient to support the termination of Father and Mother's parental rights to the children. We affirm.

Affirmed.

Kirsch, J., and Robb, J., concur.